## Maurice Estate

*Duvall & Reuter,* for exceptants.

*Bennett, Davis & Murphy,* contra.

WILLIAMS, P. J., August 28, 1970.—The history of this case up to January 15, 1969, was reviewed in the opinion In re: Estate of Margaret Stewart Maurice, deceased, 433 Pa. 103. In addition, this court was directed to take testimony from the corporate executor in explanation of the overpayment of the Federal estate tax and in proof that it employed common caution and skill. The procedure was directed by reason of the burden of proof having shifted to the executor after the error in tax computation was shown.

This directive has been complied with by oral testimony and stipulation.

Sometimes, close, informal, personal and professional relationships give rise to unfortunate legal consequences. Good faith and genuine concern for the presumed desires of deceased friends and clients are not a substitute for failing to meet legal standards of care, skill and caution in handling their formal affairs after their demise.

The instant case shows that a close, personal and professional relationship existed between the firm of Bennett and Davis, counsel for the corporate executor, counsel for decedent and her sister during their lifetimes and Harry LaBarr of the firm of LaBarr and Labarr, the firm who computed the Federal tax returns. Mr. Bennett, an able and respected member of the Bradford County bar, was also trust officer and president of the bank, acting as corporate execu-

tor for the Margaret Stewart Maurice Estate, as it did three years prior for Margaret's sister's estate.

Oral testimony was taken September 25, 1969. On October 8, 1969, by way of a stipulation and again on February 18, 1970, by stipulation, the case was concluded and, unhappily, remains unresolved.

This court, initially, must decide whether or not the corporate executor has met its burden of proving it used common caution and skill in administering the Margaret Stewart Maurice estate. Specifically, is the executor's explanation for overpayment of the Federal estate tax legally sufficient to exonerate it? We think not.

First, without a specific direction in a decedent's will, directing the employment of tax consultants, the executor should reasonably have the burden of proving the need for their services. A complicated and uncommon Federal tax problem could impose a duty on the executor to secure a specialist for the limited purpose of resolving it. The testimony doesn't reflect such a problem unless mere size, approximately $900,000, is, in itself, justification. Size, per se, is not sufficient in our opinion, although it could be a factor. We find nothing else in the testimony to combine with size to justify employment of tax consultants: Hahl Estate, 89 D. & C. 380, 4 Fid. Rep. 351. Decisional authority is limited.

A corporate executor daily advertises its services. It is hard to believe that one availing himself of them, when his will is prepared, anticipates that it is the beginning of a chain of additional professional services other than those traditionally supplied and required from the legal profession. We don't foreclose the use of tax consultants or other specialized and frequently necessary services. It is simply that an executor must use common skill, prudence and caution in determining the *need* for such services in

terms of *benefit to the estate* and those who claim through it. The court finds at this point a breach of its duty as executor.

Let's assume, arguendo, a situation wherein the executor has a legal right in any estate to purchase on behalf of the estate tax services, or any other specialized services, which services are purchased from acknowledged competent tax consultants, but, in fact, are performed negligently, causing a loss. What can the heir, legatee, legally do? It is conceivable that he might be looking to an auctioneer in Florida, an appraiser in Texas, a tax consultant in California and an attorney in Michigan and an executor in Pennsylvania, just to get what he legally had coming to him; all, persons he never contracted with, never knew or retained, and whose substandard performances he learned of years after they happened. Now, if the executor promptly accounts for his administration and *promptly reviews* the services and results obtained from the aforesaid professionals, using common skill, caution and prudence, he will absolve himself from responsibility, assuming he discovers, or should reasonably discover, any deficiencies and promptly takes steps to rectify them himself or through the original provider of the services. Such review or affirmative action, if required, doesn't make an executor an insurer or guarantor; which he isn't. It does, however, require the exercise of common skill and caution. Parenthetically, a corporate executor may not now be held to a higher degree of skill and caution than an individual executor, but its experience, facilities and continuous requests for employment certainly require a professionalism in its stewardship.

The evidence shows the retained tax consultants prepared the original Federal tax return which was

perfunctorily signed by the executor. The testimony is confusing, but it can be reasonably inferred that the executor did not ask its counsel to review the return, and, in fact, did not review the return prior to execution. The explanation is understandable, but not legally sufficient.

In July of 1962, prior to the running of the statute of limitations, an audit was held in the offices of Bennet and Davis. Two questions were raised by the agent, not directly connected with the failure to take credit for property previously taxed. By reason of the initial use of the services of LaBarr and LaBarr, assuming the legal necessity and propriety of their services, should not they have been notified of the audit and in attendance? The testimony states they were not notified or present. If the executor exercised a proper degree of caution and skill, it would have required their presence and talents under the circumstances.

We have reason to believe dehors the record, that LaBarr and LaBarr have, over a period of years, satisfactorily computed Federal tax returns. We feel similarly in respect to the firm of Bennett and Davis, and the Citizens National Bank and Trust Company of Towanda, Pa., which appears to some degree from the testimony, but is known to the court. The *record,* however, doesn't legally substantiate LaBarr and LaBarr's special competence in the Federal estate taxation field. The witness called by the executor had only very general knowledge of any specialty of LaBarr and LaBarr. No one from the firm appeared to testify, although stipulation filed February 8, 1970, states their availability. This, however, is immaterial, since no legally sufficient reason has been proven necessitating their services. We point out, although the corporate executor under the circumstances of this case should not have employed tax consultants, we seri-

ously doubt if the testimony of record establishes their expertise.

The corporate executor, shortly before, administered decedent's sister's estate, wherein the property had been previously taxed, which places the corporate executor in the position of having knowledge of the content, nature, size and any special problems of decedent's estate. An executor, in performing its duties, should use all its knowledge advantageously, no matter how acquired.

Because the account showing payment of the Federal estate tax was not filed until five and one-half years after decedent's death and four years after the Federal estate tax was paid, and one year after the statute of limitations had run, exceptants were in no position to resort to self-help. This delay does not appear to be consistent with common caution and skill. This failure to account and notify the heirs of what went on may not bear a clear, traceable relationship to the loss sustained by the heirs from overpayment; however, it foreclosed their filing a claim for a refund even if the error were fortuitiously discovered.

The individual deficiencies in common caution, skill and prudence are sufficient to sustain exceptant's position. In any event, the aforesaid deficiencies, cumulatively, reflect an administration of the Margaret Stewart Maurice estate that does not measure up to the standard of care imposed by the law. The burden of proof by the executor showing common skill, caution and prudence has not been met. Therefore, the court makes the following

## ORDER

And now, August 28, 1970, the exceptions to the account of the Citizens National Bank and Trust Company, Towanda, Pa., executor of the Estate of Margaret Stewart Maurice not previously disposed of by

agreement are sustained and the aforesaid executor is surcharged in the amount of $17,215.18, together with interest from March 22, 1960, the date of overpayment, and directed to pay the said amount to the estate for distribution in accordance with the will of decedent.